IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| HOWARD G., individually and on behalf of his minor child, JOSHUA G.,<br><br>      Plaintiffs,<br><br>  vs.<br><br>STATE OF HAWAII, DEPARTMENT OF EDUCATION and KATHRYN MATAYOSHI, in her official capacity as Acting Superintendent of the Hawaii Public Schools,<br><br>      Defendants.<br>_____<br>DEPARTMENT OF EDUCATION, STATE OF HAWAI'I,<br><br>      Plaintiff,<br><br>  vs.<br><br>J.G., by and through his Parents, H.G. and D.G.,<br><br>      Defendants. | CIVIL NO. 11-00523 DKW-BMK<br>CIVIL NO. 13-00029 DKW-BMK<br>(CONSOLIDATED CASE)<br><br>**ORDER REVERSING THE ADMINISTRATIVE HEARINGS OFFICER'S DECEMBER 20, 2012 DECISION** |

# ORDER REVERSING THE ADMINISTRATIVE HEARINGS OFFICER'S DECEMBER 20, 2012 DECISION

## INTRODUCTION

Before the Court is Department of Education, State of Hawai'i's ("DOE") appeal, pursuant to the Individuals with Disabilities Education Act of 2004 ("IDEA"), 20 U.S.C. § 1400 *et seq.*, from the Administrative Hearings Officer's ("Hearings Officer") December 20, 2012 Decision entitled "Remanded Decision Subsequent to U.S. District Court's Order Affirming in Part, Vacating in Part and Remanding in Part the Decision of the Administrative Hearings Officer" ("Decision").  Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for disposition without a hearing.  After careful consideration of the supporting and opposing memoranda, the administrative record, and the relevant legal authority, the December 20, 2012 Decision is REVERSED.

## BACKGROUND

This is an appeal of a single issue remanded to the Hearings Officer to decide following District Judge Ezra's June 29, 2012 Order Affirming in Part, Vacating in Part and Remanding in Part the Decision of the Administrative Hearings Officer ("Remand Order").  *Howard G., et al. v. DOE et al.*, CV 11-00523 DAE-BMK, Dkt. No. 27 (D. Haw. June 29, 2012).  The extensive factual history prior to this appeal can be found in that Remand Order.  Only the facts directly pertinent to this appeal are briefly recounted here.

On August 3, 2011, the Hearings Officer issued a decision which concluded that J.G. ("Student"), by and through his Parents, H.G. ("Father") and D.G. ("Mother") (collectively, "Parents"), had not shown that Student's November 4, 2010 Individual Education Plan ("IEP"): (1) was untimely; (2) failed to use current information; (3) limited parental participation; (4) did not appropriately address Student's need for a transition process between the present program and the proposed DOE program; (5) failed to include a teacher sufficient to adhere to the requirements of the IDEA; or (6) failed to offer Student appropriate services to address his need for one-to-one instruction or a program specifically tailored to address his behavioral and autism-specific needs. Decision at 2–3; Remand Order at 8. Student and Parents appealed to this Court and Judge Ezra's Remand Order disposed of that appeal.

Specifically, the Remand Order affirmed all of the Hearings Officer's determinations on the merits, except for one issue that remained unresolved and was thus remanded:

> The question remains whether the IEP is reasonably calculated to enable [Student] to receive educational benefit. In other words, the issue is whether [Student] needed one-to-one instruction. The Hearings Officer, however, did not clearly address this issue. As noted above, the Hearings Officer found that after considering [Student's] progress with one-to-one instruction in his CARD program, [Student] did not need two-to-one services, and that one-to-one services were "appropriate." Thus, it appears to the Court that the Hearings Officer only determined that one-to-one services were

3

> "appropriate"—that is, that a higher level of services was not required. It remains unclear, based on the Hearings Officer's analysis, whether the Hearings Officer found that one-to-one services were in fact *required*. The Court believes that the resolution of this matter would benefit from the Hearings Officer's specialized expertise. Therefore, the Court remands to the Hearings Officer the issue of whether one-to-one services were required; that is, in light of the Court's finding that the IEP did not offer one-to-one services, whether the IEP was substantively adequate.

Remand Order at 29–30 (internal citations omitted). The Remand Order also concluded that a determination of reimbursement under the IDEA was premature pending the remand, and that although Student and Parents raised the issue of stay put, it should be addressed in appropriate, separate briefing if Student and Parents sought stay put relief.

On remand, the Hearings Officer determined that, in light of the Remand Order, the IEP was a substantive denial of FAPE. The Hearings Officer explained in relevant part:

> Part of what the November 4, 2010 IEP offered Student were numerous supplementary aids and services, including "consistent close adult supervision/paraprofessional support" for 1740 minutes per week. Father testified that he understood at the November 4, 2010 IEP meeting that the DOE would have somebody assigned to Student. The DOE promised somebody to watch Student. The acting principal testified that she believed that the language, "consistent close adult supervision/paraprofessional support" for 1740 minutes per week, meant that Student would have 2 teachers and 2 paraprofessionals. However, this was not specifically discussed and was not written into the IEP. It is also noted that 1740

>minutes per week is the number of minutes one full-time person would work.
>
>The facts also show that although Student had a BSP at the private school, Father did not tell the IEP team that Student had a BSP. The school psychologist, testifying as an expert in school psychology, stated that "consistent close adult supervision/paraprofessional support" would vary depending on what Student needed in various environments. The school psychologist further testified that a BSP could be drawn up after observing Student in the home school environment.
>
>These facts show that, at the time the November 4, 2010 IEP was created, Student was a child with autism and had significant delays in language. The fact that Student had a BSP shows he had behavioral problems, even though Father's testimony describes Student's behaviors as mild. The fact that Student required "consistent close adult supervision/paraprofessional support" indicates that Student had social and/or safety concerns such that he could not be left alone. The acting principal's belief that "consistent close adult supervision/paraprofessional support" for 1740 minutes per week meant that Student would have 2 teachers and 2 paraprofessionals, further shows the extent of Student's lack of independence.
>
>The Hearings Officer concludes that Student needed one-to-one services. Because it has been determined by Judge Ezra that the November 4, 2010 IEP did not offer one-to-one services, the November 4, 2010 IEP's lack of one-to-one services is a denial of FAPE.

Decision at 10–11.

The DOE's subsequent appeal[1] of that single issue is presently before the Court.

---

[1] In the Answering Brief, Student and Parents object to this separate appeal, contending that the Court lacks subject matter jurisdiction because the appeal should have been taken in the same civil matter as the previous appeal. Answering Br. at 2. However, the parties have since stipulated to consolidate this civil matter with the previous civil matter in which Judge Ezra

## STANDARD OF REVIEW

### I. IDEA Overview

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education and providing financial assistance to enable states to meet their educational needs." *Hoeft ex rel. Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992) (citing *Honig v. Doe*, 484 U.S. 305, 310 (1988)).  It ensures that "all children with disabilities have available to them a free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]" 20 U.S.C. § 1400(d)(1)(A).  The IDEA defines FAPE as special education and related services that—

> (A) have been provided at public expense, under public supervision and direction, and without charge;
> (B) meet the standards of the State educational agency;
> (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
> (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9).  To provide a FAPE in compliance with the IDEA, a state educational agency receiving federal funds must evaluate a student, determine whether that student is eligible for special education, and formulate and implement

---

issued the Remand Order.  CV 11-00523 DKW-BMK, Dkt. No. 32 (Aug. 21, 2013); CV 13-00029 DKW-BMK, Dkt. No. 26 (Aug. 21, 2013).

an IEP.  20 U.S.C. § 1414.  The IEP is to be developed by an "IEP Team" composed of, *inter alia*, school officials, parents, teachers and other persons knowledgeable about the child.  20 U.S.C. § 1414(d)(1)(B).

"Procedural flaws in the IEP process do not always amount to the denial of a FAPE."  *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 909 (9th Cir. 2009) (citations omitted).  Once a procedural violation of the IDEA is identified, the court "must determine whether that violation affected the substantive rights of the parent or child."  *Id.* (citations omitted).  "[P]rocedural inadequacies that result in the loss of educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process, clearly result in the denial of a FAPE."  *Id.* (alteration in original) (citations and quotation marks omitted).

Compliance with the IDEA does not require school districts to provide the "absolutely best" or "potential-maximizing" education.  *J.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 439 (9th Cir. 2010) (citation and internal quotation marks omitted).  Rather, school districts are required to provide only a "'basic floor of opportunity.'"  *Id.* (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 201 (1982)).  The FAPE need only be "appropriately designed and implemented so as to convey [the][s]tudent with a meaningful benefit."  *Id.* at 433 (citations and quotation marks omitted).

## II.     Standard of Review

The standard for district court review of an administrative decision under the IDEA is set forth in 20 U.S.C. § 1415(i)(2)(C), which provides:

> In any action brought under this paragraph, the court—
>
> (i) shall receive the records of the administrative proceedings;
>
> (ii) shall hear additional evidence at the request of a party; and
>
> (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

This standard requires that the district court give "'due weight'" to the administrative proceedings. *Capistrano*, 556 F.3d at 908 (quoting *Rowley*, 458 U.S. at 206) (some citations omitted). The district court, however, has the discretion to determine the amount of deference it will accord the administrative ruling. *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 438 (9th Cir. 2010) (citing *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987)). In reaching that determination, the court should consider the thoroughness of the hearings officer's findings, increasing the degree of deference where said findings are "'thorough and careful.'" *Capistrano*, 556 F.3d at 908 (quoting *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995)).

The district court should give "substantial weight" to the hearings officer's decision when the decision "evinces his careful, impartial consideration of all the evidence and demonstrates his sensitivity to the complexity of the issues presented." *Cnty. of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1466–67 (9th Cir. 1996) (citation and quotation marks omitted). Such deference is appropriate because "if the district court tried the case anew, the work of the hearing officer would not receive 'due weight,' and would be largely wasted." *Wartenberg*, 59 F.3d at 891. "[T]he ultimate determination of whether an IEP was appropriate," however, "is reviewed de novo." *A.M. ex rel. Marshall v. Monrovia Unified Sch. Dist.*, 627 F.3d 773, 778 (9th Cir. 2010) (citing *Wartenberg*, 59 F.3d at 891).

A court's inquiry in reviewing IDEA administrative decisions is twofold:

> First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? [*Rowley*, 458 U.S. at 206–07] (footnotes omitted). If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more. *Id.* at 207.

*J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 947 (9th Cir. 2010) (some citations omitted).

The burden of proof in IDEA appeal proceedings is on the party challenging the administrative ruling. *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1103 (9th Cir. 2007) (citations omitted). The challenging party must show, by a preponderance of the evidence, that the hearing decision should be reversed. *J.W.*, 626 F.3d at 438 (citation omitted).

## **DISCUSSION**

The DOE contends that the Decision improperly concluded that Student required one-to-one services[2] because there was no evidence to support this conclusion and Parents and Student had the initial burden of presenting evidence to suggest the need for one-to-one services. The Court agrees with the DOE that there is insufficient evidence to support the Hearings Officer's conclusion. Accordingly, the Decision is reversed.

### I. **Evidence of the Need for One-to-One Services or Instruction**

The DOE contends that Student and Parent did not satisfy their initial evidentiary obligation before the Hearings Officer to establish that Student required one-to-one services or instruction. The Court concludes that Student and Parents did not identify any evidence proving this requirement, nor did the

---

[2] The DOE argues that the Hearings Officer erred in ruling that Student required one-to-one *services*, when the issue on remand was whether Student required one-to-one *instruction*, which the DOE contends was never decided by the Hearings Officer. The Court need not address this distinction in light of its ruling here, other than to conclude that Student and Parents did not provide sufficient evidence that Student required *either* one-to-one services *or* instruction. Thus, the Decision is reversed to the extent that it concluded that one-to-one *services* were required *and* to the extent that it determined that one-to-one *instruction* was required.

Hearings Officer cite any. Rather, the Hearings Officer relied on the same evidence that Judge Ezra previously determined was insufficient to conclude that such one-to-one services were required.

> In the Remand Order, Judge Ezra determined:
>
> The Court finds that the evidence does not support the Hearings Officer's conclusion that the IEP provides one-to-one services. First the term "consistent close adult supervision/paraprofessional support" is ambiguous. Indeed, as the Hearings Officer noted, the acting principal interpreted "consistent close adult supervision" for 1740 minutes per week to mean that [Student] would have two teachers and two paraprofessionals. The school psychologist, however, testified that the IEP team agreed that [Student] would have "close adult supervision" and that he was not going to have one-to-one instruction. Even assuming that 1740 minutes per week equals the number of minutes a full-time person would work, it does not necessarily follow that this person will provide one-to-one services.

Remand Order at 29. In short, Judge Ezra held that the "consistent close adult supervision/paraprofessional support" language from the IEP, in conjunction with the testimony of the acting principal and the contrasting testimony of the school psychologist, were collectively insufficient evidence that one-to-one services would be provided to Student.

Inexplicably, however, the Hearings Officer on remand relied on the same language from the IEP and the same testimony from the acting school principal to reach a different conclusion:

11

> The acting principal testified that she believed that the language, "consistent close adult supervision/paraprofessional support" for 1740 minutes per week, meant that Student would have 2 teachers and 2 paraprofessionals. However, this was not specifically discussed and was not written into the IEP. It is also noted that 1740 minutes per week is the number of minutes one full-time person would work.

Decision at 10–11. Judge Ezra had already concluded that this evidence was insufficient to show that one-to-one services would be provided under the IEP or were required. That determination is law of the case, which neither this Court and certainly not the Hearings Officer is permitted to disturb.

The Hearings Officer also improperly relied on the fact that Student had a Behavioral Support Plan ("BSP") as evidence that Student required one-to-one services. Decision at 11. Again, this evidence does not support any inference that Student required one-to-one services or instruction. First, as even the Hearings Officer noted, Father never communicated to the IEP team that Student had a BSP.[3]  Second, and more importantly, the existence of a BSP does not indicate that an autistic student requires one-to-one services. This Court is frequently faced with cases involving students with a BSP that do not necessarily require one-to-one services. Thus, having a BSP alone does not speak to any

---

[3] Regardless of whether the IEP team knew that Student had a BSP, Judge Ezra concluded that the Student and Parents had not established that the IEP was lacking in addressing Student's behavioral needs. Remand Order at 33–34. This is also law of the case here and would thus preclude the Hearings Officer's conclusion that Student's behaviors established a need for one-to-one services.

inference in favor of a determination that one-to-one services or instruction may be necessary.

Finally, the Hearings Officer relied on the testimony of Father that his understanding from the IEP meeting was that the DOE would have someone assigned to Student. Decision at 10. Given the partial nature of this testimony, and the lack of any other evidence supporting it, this testimony does not approach the necessary level of evidence to conclude that Student required one-to-one services or instruction. In fact, as Judge Ezra found (another finding apparently disregarded by the Hearings Officer), the testimony of the school psychologist was that "close adult supervision" did not necessarily mean one-to-one instruction, Remand Order at 29, and this evidence was thus contrary to Father's testimony. *See* Hearings Tr. at 196:1–23.

In short, none of the evidence relied on by the Hearings Officer speaks to, let alone establishes, Student's need for one-to-one services. Further, Student and Parents do not point to any persuasive evidence in their briefing before this Court, other than the same evidence relied on by the Hearings Officer.[4] On remand, the burden was on Student and Parents to establish that Student required one-to-one services or instruction. *Schaffer v. Weast*, 546 U.S. 49, 62 (2005) ("The

---

[4] Student and Parents' Answering Brief is largely identical to their brief filed before the Hearings Officer on remand. Consequently, the Answering Brief does not even respond to many of the DOE's arguments made in the Opening Brief here on appeal.

burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief."). Student and Parents failed to satisfy that burden before the Hearings Officer and the DOE has sufficiently established on appeal that the Decision was incorrect.

## II.    Reimbursement and Stay Put

The Hearings Officer recommended that, in light of his decision that the lack of one-to-one services was a denial of FAPE, reimbursement should be granted to Parents. However, because the Court now reverses the Decision and concludes that there was no denial of FAPE, reimbursement is not proper here. *Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1058–59 (9th Cir. 2012); *D.E.B. v. DOE*, 2013 WL 6210633, at *7 (D. Haw. Nov. 27, 2013).

In the Answering Brief, Student and Parents also argue for stay put payments through the pendency of this appeal. Student and Parents also similarly raised the issue of stay put in a belated fashion in the prior appeal before Judge Ezra. Judge Ezra declined to address stay put in the appeal itself, requiring that a proper stay put motion be filed. Remand Order at 36. This Court follows suit. If Student and Parents are still seeking stay put, they must file a separate motion with proper briefing.

## **CONCLUSION**

The Administrative Hearings Officer's December 20, 2012 Decision is hereby REVERSED. The DOE is the prevailing party in the appeal.

IT IS SO ORDERED.

DATED: HONOLULU, HAWAI'I, February 24, 2014.



Derrick K. Watson
United States District Judge

___

HOWARD G. et al v. DOE/DOE v. JG, et al.; CV 11-00523 DKW-BMK; ORDER REVERSING THE ADMINISTRATIVE HEARINGS OFFICER'S DECEMBER 20, 2012 DECISION