UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| HOWARD G., INDIVIDUALLY AND ON BEHALF OF HIS MINOR CHILD, JOSHUA G.; and JOSHUA G., <br><br> Plaintiffs, <br><br><br> vs. <br><br> STATE OF HAWAII, DEPARTMENT OF EDUCATION, KATHRYN MATAYOSHI, IN HER OFFICIAL CAPACITY AS ACTING SUPERINTENDENT OF THE HAWAII PUBLIC SCHOOLS, <br><br> Defendants. | CIV. NO. 11-00523 DKW-KSC <br> CIV. NO. 13-00029 DKW-KSC <br><br><br><br> **ORDER DENYING MOTION TO ENFORCE RESOLUTION AGREEMENT** |

Before the Court is Plaintiffs' April 28, 2017 Motion to Enforce Resolution

Agreement (ECF No. 75). For the reasons set forth below, the Motion to Enforce

is DENIED.

## BACKGROUND

Joshua G., a minor child with autism ("Student"), is eligible to receive

special education and related services pursuant to the Individuals with Disabilities

Education Act of 2004 ("IDEA"), 20 U.S.C. §§ 1400, *et seq*. In approximately

March 2010, Student began participating in a program created by the privately

owned Center for Autism and Related Disorders ("CARD") for Autism

Management Services ("AMS").[1]  Student's Parents have requested several due

process hearings over the past several years that have resulted in resolution

sessions with the Department of Education ("DOE") designed to facilitate

compromise and avoid the need for protracted litigation.  The instant matter

involves Parents' sixth due process complaint, filed November 17, 2010 (*see*

11/17/10 Compl., Ex. A, H.G. Decl., ECF No. 75-1 at 4–8), in which they sought

reimbursement from the DOE for the cost of Student's CARD-AMS program.

DOE convened a resolution session on December 2, 2010 (the "Resolution

Session") to address Parents' November 17, 2010 complaint.  In attendance at the

Resolution Session were Denise Guerin, a DOE representative/facilitator; JoAnne

Higa, principal of Kamalii Elementary School; and Plaintiff Howard G. ("Father"),

who appeared telephonically along with Parents' attorney, Keith Peck.  *See* Guerin

Decl. ¶ 2, ECF No. 79-1.

The parties sharply disagree about what was agreed upon, if anything, at the

Resolution Session.  For example, the DOE represents, via Guerin's declaration:

> During the Resolution Session on December 2, 2010, the DOE
> and Parent H.G. did not reach any agreement on any matter
> being asserted in the administrative proceedings below and,

---

[1]When Student began participating in the CARD program, AMS was owned by Student's
grandmother, and Student was the only pupil at AMS.  8/27/14 Order at 2, ECF No. 50 (citing
ECF No. 27 at 2).

therefore, there was no separate agreement prepared by the [DOE].  Furthermore, during the Resolution Session, the [DOE] did not reach an agreement with Parent H.G. that AMS would be the stay-put placement for the Student.

Guerin Decl. ¶ 5, ECF No. 79-1.  In contrast, H.G. states:

On December 2, 2010, the parties settled the issue of reimbursement of tuition and expenses and stay put for J.G. at Autism Management Services a/k/a Maui Autism Center from the date of the [individualized educational plan ('IEP')] (November 3, 2010) through the start of the 2011–12 school year and stay put for approximately 3.5 years, but did not settle any other issues.

H.G. Decl. ¶ 5, ECF No. 75-1 at 2.  No transcript of the Resolution Session exists; there is only a two-page Resolution Session Summary that was contemporaneously prepared that reflects what transpired during that session.  Resolution Session Summary, Ex. B, H.G. Decl., ECF No. 75-1 at 9–10 [hereinafter Summary].

On April 28, 2017, Parents filed the instant motion "to enforce the Resolution Agreement" that, they argue, was "reached . . . on December 2, 2010 pursuant to 20 U.S.C. § 1415(f)(1)(B)."  Mot. to Enforce ¶ 3, ECF No. 75.  As proof of the existence of a Resolution Agreement, Parents point to the brief Summary of the December 2, 2010 meeting (ECF No. 75-1 at 9–10), and Father's declaration, which states that Father understood that two quasi-agreements were formed at this Resolution Session and includes a chart of payments allegedly received pursuant to these agreements (H.G. Decl. ¶ 6, ECF No. 75-1 at 2).  Specifically, Parents contend:

4.    As reflected in the Resolution Session Summary, the parties settled the issue of reimbursement of tuition and expenses for J.G. at the private program from the November 4, 2010 IEP through the start of the 2011–12 school year and stay put for approximately 3.5 years, but did not settle any other issues.

5.    [DOE] made payments in accordance with the Resolution Agreement at an agreed rate of $14,062.41 per month covering the period of November 2010 through January 2012.

6.    In February 2012, [DOE] unexpectedly and without explanation ceased making payments.

7.    On March 11, 2014, the IEP team determined that Autism Management Services was the appropriate placement for J.G. and resumed making the $14,062.41 monthly payments.

Mot. to Enforce ¶¶ 4–7 (citing H.G. Decl. ¶¶ 5–9; Summary, ECF No. 75-1 at 9).

The chart of payments represents that the DOE made monthly payments of $14,062.41 between the date of the Resolution Session and February 2012, when DOE "unexpectedly and without explanation ceased making payments." *See* H.G. Decl. ¶¶ 6–7, ECF No. 75-1 at 2. In order to remedy this alleged violation, Parents ask the Court to "treat the Resolution Agreement as a settlement agreement and enforce it like a contract pursuant to the statutory language in IDEA." Reply at 7, ECF No. 80. Doing so, according to Parents, would result in DOE being ordered "to pay the sum of $356,247.22 plus interest plus attorney's fees and costs." Mot. to Enforce at 1, ECF No. 75. Pursuant to the below discussion, the Court declines to do so.

## DISCUSSION

To prevail on a claim for breach of contract in Hawai'i, a party must prove:
"(1) the contract at issue; (2) the parties to the contract; (3) whether Plaintiff
performed under the contract; (4) the particular provision of the contract allegedly
violated by Defendants; and (5) when and how Defendants allegedly breached the
contract." *Keahole Point Fish LLC v. Skretting Canada Inc.*, 971 F. Supp. 2d
1017, 1040 (D. Haw. 2013) (quoting *Evergreen Eng'g, Inc. v. Green Energy Team
LLC*, 884 F. Supp. 2d 1049, 1059–60 (D. Haw. 2012)). As proof of the purported
agreement they seek to enforce, Parents offer three pieces of evidence: (1) the two-
page Summary (ECF No. 75-1 at 9–10); (2) DOE's alleged part performance of the
agreement in the form of monthly payments that Parents' assert stopped without
notice in February 2012 (*see* H.G. Decl. ¶¶ 6–7, ECF No. 75-1 at 2); and (3)
Father's April 27, 2017 Declaration (ECF No. 75-1 at 1–3), which states that he
understood that two quasi-agreements were formed at the resolution session in
question. None of this evidence, however, establishes the existence of "the
contract at issue" or "the particular provision of the contract allegedly violated"
that may be enforced by the Court. *Keahole Point Fish*, 971 F. Supp. 2d at 1040.
Accordingly, the Motion to Enforce (ECF No. 75) is DENIED.

**A.     The Summary is not a contractually enforceable document.**

   1.     The Summary is not consistent with an IDEA "written settlement
          agreement."

Under the IDEA, parties who file a due process complaint are afforded an "opportunity for an impartial due process hearing" to be "conducted by the State educational agency" at issue—here, the DOE. 20 U.S.C. § 1415(f)(1)(A). Prior to such a hearing, the parties engage in a "[r]esolution session" like the one that took place on December 2, 2010 in this case. 20 U.S.C. § 1415(f)(1)(B)(i). If the parties are able to reach a "settlement agreement" at such a meeting, the statute further provides minimum standards for memorializing it:

> In the case that a resolution is reached to resolve the complaint at a meeting described in clause (i), the parties shall execute a legally binding agreement that is—
>
> (I)    signed by both the parent and a representative of the agency who has the authority to bind such an agency; and
>
> (II)    enforceable in any State court of competent jurisdiction or in a district court of the United States.

20 U.S.C. § 1415(f)(1)(B)(iii) (entitled "Written settlement agreement"). *Accord* Guerin Decl. ¶ 4 ("If the [DOE] and a family asserting due process administrative claims do reach any agreement during a resolution session, the [DOE] prepares a *separate* agreement documenting the agreement reached between the parties which is then executed by the parties." (emphasis added)).

Here, the Summary is not consistent with these statutory requirements. The document only contains one signature line (for the facilitator), which Guerin has

signed and dated. Summary at 2, ECF No. 75-1 at 10. Neither Parents nor their

legal representative signed, initialed, or marked any portion of the Summary in a

manner that might even arguably satisfy the first statutory condition. Moreover,

while both Guerin and Principal Higa attended the Resolution Session on

December 2, 2010 as representatives of the DOE (Guerin Decl. ¶ 2), there is no

evidence before the Court that one or both possessed the authority to bind the DOE

to any agreement reached. As a matter of law, then, the Summary cannot be the

written settlement agreement suggested by Plaintiffs or contemplated by the IDEA.

*See* 20 U.S.C. § 1415(f)(1)(B)(iii)(I).

> 2.    The Summary is not sufficiently precise to render any agreement
>        therein enforceable.

The Summary also fails to satisfy ordinary, common law requirements for an

enforceable contract. *See generally D.R. v. E. Brunswick Bd. of Educ.*, 109 F.3d

896, 901 (3d Cir. 1997) (applying ordinary contract principles and concluding that

the agreement should be enforced as written and agreed to by the parties), *cert.*

*denied*, 522 U.S. 968 (1997). That is, "in order for [a breach of contract] action to

be based on an instrument in writing, the writing must express the obligation sued

upon." *Miron v. Herbalife Int'l, Inc.*, 11 Fed. Appx. 927, 929 (9th Cir. 2001)

(quoting *Murphy v. Hartford Accident & Indem. Co.*, 2 Cal. Rptr. 325, 328 (Cal.

Ct. App. 1960)) (additional citation omitted) (construing California law). As such,

the contractual terms "must be stated with sufficient definiteness to be

enforceable." *Baham v. Ass'n of Apartment Owners of Opua Hale Patio Homes*,

2014 WL 2761744, at *12 (D. Haw. June 18, 2014) (citing *Fyffe v. Hue*, 2010 WL

3409655, at *1 (Hawai'i Ct. App. Aug. 31, 2010) (finding written agreement to

purchase a property "subject to financing" to be unenforceable because it "lacked

sufficient definiteness for a court to determine the terms of financing" (quoting

another source) (brackets omitted)). No such "definiteness" exists in the

Summary.

The Summary appears to be nothing more than a completed version of the

two-page, fillable form created by the DOE in order to "document the discussions"

between parties to any given resolution session. Guerin Decl. ¶ 3, ECF No. 79-1;

*cf.* Summary at 1, ECF No. 75-1 at 9 ("The following is the facilitator's synopsis

of all the issues discussed at the resolution session[.]"). Indeed, following a

recitation of the issues raised in Plaintiffs' November 17, 2010 due process

complaint, the "Proposed Remedies" section of the Summary reads:

> **1.** **Award reimbursement to Petitioners for any educational and related expenses incurred from the date of the IEP until the start of the 2011–2012 school year; student is in a private CARD program.** Ms. Higa asked the cost of the program. [Parents' attorney,] Mr. Peck[,] responded that the cost is $13,500 per month. Mr. Peck noted that with the administrative hearing, district and 9th circuit court of appeals federal court time DOE would be obligated to pay for stay put would be for approximately 3 ½ years.

> **2. Find that the petitioners are the prevailing party.** No resolution on this issue.
>
> **3. Award attorneys fees and costs in the prosecution of this and related matters.** No resolution on this proposed remedy.
>
> **4. Enter such other and appropriate relief deemed just and necessary by this court.** No resolution on this issue.

Summary at 2, ECF No. 75-1 at 10. As the aforementioned heading suggests, the payments to which Plaintiffs now claim entitlement are described in the Summary as the remedy "proposed" by Parents, not the remedy awarded by DOE. The balance of the Summary is consistent with that reading (*e.g.*, no attorneys' fees, costs or prevailing party determination reached). Moreover, the Summary identifies none of the specific payment terms that Parents are now claiming—*i.e.*, the $14,062.42 per month from February 2012 through March 2014. *See, e.g.*, *Eckerle v. Deutsche Bank Nat'l Trust*, 2011 WL 4971128, at \*4 (D. Haw. Oct. 18, 2011) (finding no enforceable contract where plaintiff "says that he 'believe[s] that there was a loan modification agreement,' but fails to describe the terms of the agreement"), *aff'd*, 580 Fed. Appx. 527 (9th Cir. 2014).

**B. Nothing else in the Record establishes the existence of an enforceable agreement.**

Parents contend that "the acts and conduct of [DOE] by paying [Student]'s tuition at AMS for fifteen (15) months beginning shortly after the date of the

Resolution Agreement and backdating payments to the date of the disputed IEP,"

and the fact that the DOE "ceased making payments for over twenty-five (25)

months; and, then [] restarted making the payments" show there was "an

agreement on this issue."  Reply at 7, ECF No. 80.  It appears, in other words, that

even in the absence of a written agreement, Plaintiffs insist that DOE's course of

conduct allows the Court to infer the existence of an oral agreement.

The Court disagrees.  While oral contracts are certainly recognized by

Hawai'i law under certain circumstances, *see generally Rogers v. Fukase*, 2010

WL 4812772, at \*9 (D. Haw. Nov. 16, 2010), Parents still bear the burden of

establishing the existence of an oral contract, together with its terms, by "clear and

convincing evidence," *Baham*, 2014 WL 2761744, at \*12 (citing *Boteilho v.

Boteilho*, 564 P.2d 144 (Hawai'i 1977); *Pedrina v. Chun*, 906 F. Supp. 1377, 1418

(D. Haw.1995), *aff'd*, 97 F.3d 1296 (9th Cir. 1996)).  They have far from carried

that burden.

For one, Guerin denies that any verbal agreement was reached at the only

meeting even Plaintiffs claim occurred between the parties to discuss these issues.

Guerin Decl. ¶ 5.  DOE practice, moreover, is to document any Resolution Session

agreement in a "separate" settlement agreement.  Guerin Decl. ¶ 4.  One would

expect that to be particularly true where the sums at issue are as significant as they

are here.  No such separate agreement exists.  Further, while fifteen months of

payments by DOE circumstantially suggests the existence of *some kind of*

*agreement*, payments alone do not establish an enforceable contract.  Indeed, "[i]t

is a fundamental principle of law that there must be mutual assent or a meeting of

the minds on all essential elements or terms in order to form a binding contract."

*Carson v. Saito*, 489 P.2d 636, 638 (Hawaiʻi 1971) (quoting *Honolulu Rapid*

*Transit v. Paschoal*, 449 P.2d 123, 127 (Hawaiʻi 1968)); *accord Rennick v.*

*O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 315 (9th Cir. 1996) (citation omitted).  Such

mutual assent, at minimum, must include "an offer, an acceptance, and

consideration."  *In re Estate of Tahilan v. Friendly Care Home Health Servs., Inc.*,

731 F. Supp. 2d 1000, 1006 (D. Haw. 2010) (quoting *Douglass v. Pflueger Haw.,*

*Inc.*, 135 P.3d 129, 134 (Hawaiʻi 2006)).  Here, there is no evidence, or even an

allegation, of what consideration DOE supposedly received in exchange for the

hundreds of thousands of dollars to which Plaintiffs claim entitlement.  Nor is there

clear or convincing evidence of the duration, frequency or consistency of the

payments that DOE allegedly agreed to make.  Undoubtedly, such details would be

essential to the formation of a binding contract, whether written or oral.

# **CONCLUSION**

Unable to find or infer the existence of a binding contract, the Court hereby

DENIES Plaintiffs' Motion to Enforce (ECF No. 75).

IT IS SO ORDERED.

DATED: October 26, 2017 at Honolulu, Hawaiʻi.

Derrick K. Watson
United States District Judge

---

*Howard G., Individually And On Behalf Of His Minor Child, Joshua G.; and Joshua G. v. State Of Hawaii, Department Of Education, Kathryn Matayoshi, In Her Official Capacity As Acting Superintendent Of The Hawaii Public Schools,* CIV. NO. 11-00523 DKW-KSC; **ORDER DENYING MOTION TO ENFORCE RESOLUTION AGREEMENT**