UNITED STATES DISTRICT COURT

DISTRICT OF HAWAIʻI

| | |
|---|---|
| HOWARD G., INDIVIDUALLY AND ON BEHALF OF HIS MINOR CHILD, JOSHUA G.; AND JOSHUA G., <br><br> Plaintiffs, <br><br> vs. <br><br> STATE OF HAWAII, DEPARTMENT OF EDUCATION, KATHRYN MATAYOSHI, IN HER OFFICIAL CAPACITY AS ACTING SUPERINTENDENT OF THE HAWAII PUBLIC SCHOOLS, <br><br> Defendants. | CIV. NO. 11-00523 DKW-KSC <br> CIV. NO. 13-00029 DKW-KSC <br><br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT GRANTING REIMBURSEMENT OF PRIVATE TUITION** |

## BACKGROUND

Plaintiff Joshua G. ("Student") is a minor child with autism receiving special

education and related services pursuant to the Individuals with Disabilities

Education Act of 2004 ("IDEA"), 20 U.S.C. §§ 1400, *et seq.*[1]  Student attended

Kamaliʻi Elementary School ("DOE School #1") for three years (*see* Reply in

---

[1]The IDEA was enacted "[t]o ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]"  20 U.S.C. § 1400(d)(1)(A).  As a condition of federal financial assistance under the IDEA, states must provide such an education to disabled children residing in the state who are between the ages of 3 and 21, inclusive.  20 U.S.C. § 1412(a)(1)(A).

Supp. of Mot. for Relief Pending Appeal, Ex. B [FOF/COL & Decision (Aug. 15, 2011)] at 12, Dkt. No. 49-2 [hereinafter Aug. 15, 2011 Admin. Decision]) until Parents removed him in early October 2009 (*see* Mot. for J. Granting Reimbursement, Ex. A [FOF/COL & Decision (Sept. 21, 2010)] at 3 (FOF 3), Dkt. No. 93-1 [hereinafter Sept. 21, 2010 Admin. Decision] (Student's last day was "on or about" October 12, 2009); Mot. for Relief Pending Appeal, Ex. C [FOF/COL & Decision (Sept. 10, 2010)] at 7 (FOF 33), Dkt. No. 46-7 [hereinafter Sept. 10, 2010 Admin. Decision] ("Student last attended [DOE School #1] on October 2, 2009.")). Parents removed Student because they "believed that Student was not learning and Student was losing the skills Student previously learned." Sept. 21, 2010 Admin. Decision at 3 (FOF 3), Dkt. No. 93-1. They instead began "work[ing] with Student at home" until "February or March 2010," when they "procured [private] services" for him. Sept. 21, 2010 Admin. Decision at 3 (FOFs 4, 5), Dkt. No. 93-1.

Specifically, in March 2010, the privately-owned Center for Autism and Related Disorders ("CARD") conducted an informal assessment of Student and developed a curriculum for him that was "individualized for Student's specific needs." Aug. 15, 2011 Admin. Decision at 7, 8–9 (FOFs 44, 48), Dkt. No. 49-2 (noting that the CARD Regional Director "developed a program specifically for Student"); Sept. 10, 2010 Admin. Decision at 7 (FOFs 35, 36), Dkt. No. 46-7; *see also* Sept. 21, 2010 Admin. Decision at 6 (FOF 36), Dkt. No. 93-1 (referring to this

as "Student's Private Home Program"). At that time, "there was no affiliate of CARD in Maui" so Parents formed Autism Management Services a/k/a Maui Autism Center ("AMS") "as a facility to accommodate other children on the Autism Spectrum to implement CARD methodology." Reply at 8, Dkt. No. 110 (citing Denise G. Decl. ¶¶ 3, 6, 7, Dkt. No. 110-1) (explaining that "CARD provided consultation and assistance in implementing services for children on the Autism Spectrum" enrolled at AMS)); *see* Aug. 15, 2011 Admin. Decision at 8 (FOF 47), Dkt. No. 49-2 ("AMS is the subcontractor of Student's CARD services."). Student "receive[d] his CARD services on the [St. Theresa School] private school campus" beginning in March 2010. Kuwabe Decl., Ex. D [FOF/COL & Decision (Aug. 3, 2011)] at 1, 3 (FOF 3), Dkt. No. 108-5 [hereinafter Aug. 3, 2011 Admin. Decision] (explaining that "CARD has a contract with [AMS] to provide [applied behavioral analysis] services" in Hawaii); Kuwabe Decl., Ex. B [Remanded Decision Subsequent to [June 29, 2012 Order] (Dec. 20, 2012)] at 1, 4 (FOF 2), Dkt. No. 108-3 [hereinafter Dec. 20, 2012 Admin. Decision] ("Student began his CARD program in March 2010 . . . . and received his CARD services on the [St. Theresa School] private school campus."); *cf.* Sept. 21, 2010 Admin. Decision at 3 (FOF 5), 6 (FOF 36), Dkt. No. 93-1 (stating that Student's private curriculum was provided "in the home and community settings").

Student's most recent Individualized Education Program ("IEP")[2] at the time

of his removal from public school was developed by DOE School #1 on September

14, 2009. *See* Sept. 10, 2010 Admin. Decision at 4–5 (FOFs 10–15), Dkt. No. 46-

7. Parents challenged the September 14, 2009 IEP in a January 28, 2010 Due

Process Complaint. *See* Aug. 15, 2011 Admin. Decision at 12, Dkt. No. 49-2. In

late March 2010, during a hearing on Parents' January 28, 2010 Due Process

Complaint, Defendant Department of Education ("DOE") informed the parties that

Student's new IEP would be due on April 7, 2010. *See* Sept. 21, 2010 Admin.

Decision at 3 (FOF 9), Dkt. No. 93-1. DOE School #1 subsequently developed a

new IEP for Student during an April 6, 2010 meeting (the "April 6, 2010 IEP").

The April 6, 2010 IEP was prepared without Parents and without the "data from

Student's Private Home Program about Student's current levels of performance

and function." Sept. 21, 2010 Admin. Decision at 5–6 (FOFs 27–30, 33), 10, Dkt.

No. 93-1 (some formatting altered). As a result, Parents challenged the April 6,

2010 IEP in an Impartial Hearing Request on May 6, 2010 (the "May 6, 2010 Due

Process Complaint"). *See* Sept. 21, 2010 Admin. Decision at 1, Dkt. No. 93-1.

While their challenges to the September 14, 2009 IEP and the April 6, 2010

IEP were pending, Parents moved residences, which effectively moved Student out

---

[2]An IEP is "a written statement for each child with a disability that is developed, reviewed, and revised in accordance with section 1414(d) of [the IDEA]." 20 U.S.C. § 1401(14).

of the public school district for DOE School #1, and placed him into the district for DOE School #2. *See* Aug. 15, 2011 Admin. Decision at 3 (FOF 5), Dkt. No. 49-2. "DOE School #2 was not able to implement Student's IEP," however, resulting in Student's attendance at DOE School #3 during the Summer 2010 Extended School Year ("ESY"). Aug. 15, 2011 Admin. Decision at 3 (FOF 5), Dkt. No. 49-2. A CARD representative began working directly with Student on June 30, 2010. Sept. 10, 2010 Admin. Decision at 7 (FOF 37), Dkt. No. 46-7.

Stating that they "were not satisfied with Student's DOE program," Parents withdrew Student from DOE School #3 on September 8, 2010 and never re-enrolled him there. *See* Aug. 15, 2011 Admin. Decision at 3 (FOFs 6, 8–10, 12), Dkt. No. 49-2 (explaining that at the beginning of the 2010–11 school year on or about August 1, 2010, "Student continued to attend the special education . . . program at DOE School #3," but Student "was ill and [did] not . . . attend[] school" from "August 24, 2010 to and including September 7, 2010"). The CARD regional director began working with Student in November 2010. Aug. 3, 2011 Admin. Decision at 3 (FOF 4), Dkt. No. 108-5. Student began attending AMS five days a week in early or mid-April 2011. *See* Aug. 15, 2011 Admin. Decision at 10 (FOFs 51–52), Dkt. No. 49-2; *but cf.* Aug. 3, 2011 Admin. Decision at 4 (FOF 14), Dkt. No. 108-5 ("From March 2010 to February 2011, Student was the only student at AMS.").

Administrative Hearings Officer ("AHO") Richard A. Young held a two-day evidentiary hearing on the January 28, 2010 Due Process Complaint in early August, 2010. In his September 10, 2010 written decision on the matter, AHO Young concluded that multiple issues with respect to the September 14, 2009 IEP resulted in a denial of free appropriate public education ("FAPE") to Student,[3] noted that the "CARD program was an appropriate placement" for Student, and declared Parents to be the "prevailing party" in the matter. *See* Sept. 10, 2010 Admin. Decision at 16–18, Dkt. No. 46-7. Based on these findings, AHO Young "awarded reimbursement for any educational and related expenses incurred from [Student's October 2009 removal from DOE School #1], through the end of 2010 summer ESY," and concluded that Parents were "entitled to compensatory education, including any expenses related to Student's placement in the CARD program through the end of 2010 summer ESY." Sept. 10, 2010 Admin. Decision at 18, Dkt. No. 46-7.

AHO Haunani H. Alm conducted a formal hearing on the May 6, 2010 Due Process Complaint on August 17, 2010. *See* Sept. 21, 2010 Admin. Decision at 2–3, Dkt. No. 93-1. In a written decision filed on September 21, 2010, AHO Alm

---

[3]Under the IDEA, Free Appropriate Public Education means special education and related services that: (a) have been provided at public expense, under public supervision and direction, and without charge; (b) meet the standards of the State educational agency; (c) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (d) are provided in conformity with the individualized education program. 20 U.S.C. § 1401(9); 34 C.F.R. § 300.17; Haw. Admin. R. § 8-60-2.

concluded that Student's April 6, 2010 IEP impeded Student's right to a FAPE under the IDEA . Sept. 21, 2010 Admin. Decision at 12–13, Dkt. No. 93-1. Accordingly, AHO Alm ordered the DOE to "reimburse Parents for Student's educational and related expenses, upon presentation of proper documentation of educational and related expenses, from April 6, 2010 to and including the time that an appropriate IEP is developed for Student with parent participation." Sept. 21, 2010 Admin. Decision at 12–13, Dkt. No. 93-1. AHO Alm's decision regarding the April 6, 2010 IEP also states, in relevant part, that "the Private Home Program," which "Parents procured . . . on or about March 2010," is "appropriate for Student." Sept. 21, 2010 Admin. Decision at 6 (FOF 36), 12, Dkt. No. 93-1.[4]

Student's father contacted DOE School #3 on September 27, 2010 to request a meeting to develop a new IEP for Student. *See* Aug. 15, 2011 Admin. Decision at 4 (FOF 15), Dkt. No. 49-2. The meeting to replace the April 6, 2010 IEP, which eventually took place on November 4, 2010, occurred at DOE School #1, and the resulting IEP identified Student's "Current School" as DOE School #1 despite the fact that Student no longer lived in that public school district. *See* Admin. R., Ex. 3 [Nov. 4, 2010 IEP], Dkt. No. 17-3. Dissatisfied with the November 4, 2010 IEP, Parents filed another complaint and request for impartial due process hearing

---

[4]The DOE sent Parents a letter dated October 14, 2010, stating that additional documents would be needed in order to "assist[] [Parents] by processing th[e] reimbursement[s]" ordered by AHO Young on September 10, 2010 and AHO Alm on September 21, 2010. Kuwabe Decl., Ex. F [DOE Reimbursement Letter (Oct. 14, 2010)], Dkt. No. 108-7.

on November 17, 2010.  *See* Kuwabe Decl., Ex. A [Nov. 17, 2010 Compl.] at 5–6,

Dkt. No. 109-1.  In the November 17, 2010 Complaint, Parents prayed for an

award of "reimbursement . . . for any educational and related expenses incurred

from the date of the IEP until the start of the 2011–2012 school year; student is in a

private CARD program," and they asked the hearings officer to "enter such other

and appropriate relief deemed just and necessary by this court."  Nov. 17, 2010

Compl. at 5–6, Dkt. No. 109-1.  Following an evidentiary hearing on the

November 17, 2010 Complaint, AHO Young issued his decision on August 3,

2011, recommending dismissal and finding that "[b]ased upon the testimonies of

Father and the CARD regional director . . , the CARD program is an appropriate

placement for Student where he is able to make meaningful educational gains."

Aug. 3, 2011 Admin. Decision at 17, Dkt. No. 108-5.

Parents initiated the instant lawsuit—appealing AHO Young's August 3,

2011 Administrative Decision (Dkt. No. 108-5) to this District Court—on August

25, 2011.  Compl., Dkt. No. 1.  In a June 29, 2012 Order Affirming in Part,

Vacating in Part and Remanding in Part the Decision of the Administrative

Hearings Officer ("June 29, 2012 Order"), Judge Ezra determined "that the

evidence failed to demonstrate that the [November 4, 2010] IEP would provide

one-to-one instruction" and "expressly remanded for the hearing officer to

determine whether [the Student] required it."  June 29, 2012 Order at 30, Dkt. No.

27 (stating that "a determination on reimbursement" was "premature" in light of the remanded question). AHO Young decided the single issue presented on remand without an evidentiary hearing, finding and concluding that "the November 4, 2010 IEP was not substantively adequate to address Student's needs and provide Student the opportunity to achieve meaningful educational gains, and denied Student a FAPE." Dec. 20, 2012 Admin. Decision at 3, 12, Dkt. No. 108-3. Based upon this denial of FAPE, and because the August 3, 2011 Admin. Decision found that the CARD program "is an appropriate placement for Student where he is able to make meaningful educational gains," AHO Young "recommended that [Parents] be granted reimbursement for the costs of Student's private program from November 4, 2010 through the annual review date of November 4, 2011." Dec. 20, 2012 Admin. Decision at 4 (FOF 2), 11–12, Dkt. No. 108-3. The DOE appealed the December 20, 2012 Administrative Decision to this Court by initiating a separate lawsuit, *Dep't of Educ. v. G.*, 1:13-cv-00029-DKW-KSC, Dkt. No. 1 (D. Haw. Jan. 17, 2013), which was thereafter consolidated with Judge Ezra's existing case, *Howard G., et al. v. DOE et al.*, 1:11-cv-00523-DAE-BMK (D. Haw. Aug. 25, 2011). *See* Entering Order, Dkt. No. 31.

Following a series of motions in this Court and an appeal to the Ninth Circuit Court of Appeals, CA 14-15545 (9th Cir. Mar. 24, 2014), this Court issued a January 29, 2018 Order Affirming Administrative Hearings Officer's December

20, 2012 Decision on One-To-One Services, Finding a Deprivation of FAPE, and Denying Without Prejudice Remedy Requested in Plaintiffs' Remand Memorandum. *See* Jan. 29, 2018 Order at 8–11, Dkt. No. 89.[5] After the Court denied Parents' February 25, 2018 Motion for Reconsideration (Dkt. No. 90), Parents filed the instant "Request for Judgment Granting Reimbursement of Private Tuition" on February 27, 2018 (Dkt. No. 93), in which they seek "Reimbursement for J.G.'s Private Placement Retroactive to 09/21/10[.]" Mot. for J. Granting Reimbursement at 16, Dkt. No. 93.

For the reasons set forth below, the Motion For Judgment Granting Reimbursement (Dkt. No. 93) is GRANTED.

## DISCUSSION

### I.  Legal Framework for Remedies Under the IDEA

Courts have discretion on how to craft appropriate relief for a denial of FAPE, 20 U.S.C. § 1415(i)(2)(C)(iii), which must be "designed to ensure that the

---

[5]In the January 29, 2018 Order, this Court explained that Parents had neither "detail[ed] the basis for" their request for reimbursement "for 25 months and 10 days of private placement plus the legal rate of interest *from February 1, 2012 to March 11, 2014*" (Jan. 29, 2018 Order at 17 (citing Mem. on Remand Issues as Per Order of Ct. at 5, Dkt. No. 86)), nor had they specifically requested such reimbursement in their November 17, 2010 Complaint (Jan. 29, 2018 Order at 17 (citing Nov. 2010 Compl. at 4–5, Dkt. No. 15-1; 20 U.S.C. § 1415(f)(3)(B)).  Accordingly, this Court limited its order of reimbursement to the "cost of Student's AMS program from November 4, 2010 through the start of the ESY 2011–12 school year." Jan. 29, 2018 at 18, Dkt. No. 89 (citing Dec. 20, 2012 Admin. Decision at 11, Dkt. No. 108-3) (specifying that the Court declined to "make any determination with respect to reimbursement of AMS costs from February 1, 2012 through March 11, 2014, or with respect to any other relief that Parents may seek, without a full record," and inviting Parents to "submit such a request seeking fees and costs within 30 days").

student is appropriately educated within the meaning of the IDEA," *Park ex rel. Park v. Anaheim Union High Sch.*, 464 F.3d 1025, 1033 (9th Cir. 2006).

A.  **Reimbursement**

When a public school fails to provide a student with free access to public education and a parent establishes that placement at a private school is appropriate, the IDEA authorizes reimbursement of the student's private school expenses.  *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 370 (1985) (holding that "appropriate" relief may include "retroactive reimbursement" for parents who "pay for what they consider to be the appropriate placement" rather than accept a deficient public school IEP); *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 246–47 (2009) (citing *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993)); *see also* 20 U.S.C. § 1412(a)(10)(C)(ii).  Indeed, such reimbursement would represent "expenses that [the student's local educational agency] should have paid all along and would have borne in the first instance had it developed a proper IEP." *Burlington*, 471 U.S. at 370–71 (citing 34 C.F.R. § 300.403(b)(1984)).  The IDEA additionally allows a court to award parents reimbursement of attorney's fees and costs if they are the prevailing party, 20 U.S.C. § 1415(i)(3)(B)(i), so long as the fees sought are "reasonable."  *Aguirre v. Los Angeles Unified Sch. Dist.*, 461 F.3d 1114, 1117 (9th Cir. 2006).  "A prevailing party is one who succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought

in bringing the suit." *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 825 (9th Cir. 2007). If a plaintiff prevails on one but not all claims, such plaintiff is entitled to all attorneys' fees reasonably expended in pursuing the one claim on which he or she prevailed. *Cabrales v. Cty. of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991).

In *Florence County School District Four v. Carter*, 510 U.S. 7 (1993), the Supreme Court set minimum criteria that must be met before a parent or guardian may obtain reimbursement for the unilateral placement of a child in a private school during the pendency of review proceedings. Such parents "are entitled to reimbursement only if a federal court" reaches two conclusions: "(1) that the public placement violated the IDEA, and (2) that the private school placement was proper under the [IDEA]." *Cty. of San Diego v. Cal. Special Educ. Hr'g Office*, 93 F.3d 1458, 1466 (9th Cir. 1996) (citing *Carter*, 510 U.S. at 15). If these two minimum criteria are satisfied, "the district court then must exercise its 'broad discretion' and weigh 'equitable considerations' to determine whether, and how much, reimbursement is appropriate." *C.B. ex rel. Baquerizo v. Garden Grove Unified Sch. Dist.*, 635 F.3d 1155, 1159 (9th Cir.) (quoting *Carter*, 510 U.S. at 15–16), *cert. denied*, 565 U.S. 977 (2011). The Ninth Circuit has further explained:

> In making this determination, the district court may consider all relevant equitable factors, including, *inter alia*, notice to the school district before initiating the alternative placement; the existence of other, more suitable placements; the parents' efforts in securing the

> alternative placement; and the level of cooperation by the school district.

*Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1059 (9th Cir. 2012) (citing *Forest Grove Sch. Dist. v. T.A.*, 523 F.3d 1078, 1088–89 (9th Cir. 2008), *aff'd* 557 U.S. 230 (2009)).

### B.  **Stay Put**

The IDEA also includes a "stay put" provision:

> Except as provided in subsection (k)(4),[6] during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j).  Although the statute itself does not address reimbursement for expenses related to such a placement, the Ninth Circuit has held that the stay put provision contained in 20 U.S.C. § 1415(j) requires the school district to fund the child's "then-current educational placement" at a private school, when applicable, during the pendency of any administrative or judicial proceedings under the IDEA.  *Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings*, 903 F.2d 635, 641 (9th Cir. 1990) (per curiam).  Further, although the statute similarly does not define "current educational placement," the Ninth Circuit has interpreted

---

[6]IDEA subsection (k)(4) concerns a child's placement pending a hearings officer's decision.

the phrase to mean "the placement set forth in the child's last implemented IEP." *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 902–03 (9th Cir. 2009) (citing *Johnson v. Special Educ. Hr'g Office*, 287 F.3d 1176, 1180 (9th Cir. 2002); *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 625 (6th Cir. 1990); *Drinker v. Colonial Sch. Dist.*, 78 F.3d 869, 867 (3d Cir. 1996)).  Additionally, an administrative or judicial determination made after the placement "confirm[ing] that the parental placement is appropriate" will "'constitute an agreement by the State to the change of placement' [so that] the placement becomes the 'current educational placement' for the purposes of the stay put provision." *K.D. ex rel. C.L. v. Dept. of Educ.*, 665 F.3d 1110, 1118 (9th Cir. 2011) (quoting *Clovis*, 903 F.2d at 641).

## II.     The Proper Remedy is Reimbursement for Student's Private Educational Expenses Retroactive to September 14, 2009

### A.     Parents Have Satisfied the Minimum Criteria for Reimbursement

Here, Parents have satisfied the first criterion set forth in *Florence County School District Four v. Carter*, 510 U.S. 7 (1993), because there have been multiple determinations that Student's various 2009 and 2010 IEPs denied Student a FAPE.  *E.g.*, Sept. 10, 2010 Admin. Decision at 17–18, Dkt. No. 46-7 (finding and concluding both that "[t]he DOE's failure to provide Student access to [his] general education [peers as was specified in the IEP] was a material failure to implement Student's September 14, 2009 IEP and resulted in a denial of FAPE,"

14

and that "[t]he DOE is in violation of HAR Section 8-56-37(a)(1)" because "the contracted private service provider was not allowed to communicate with parents to the extent that parents were able to know Student's abilities and deficits so that they could provide meaningful participation at the IEP meeting . . . , which resulted in a denial of FAPE"); Sept. 21, 2010 Admin. Decision at 10–12, Dkt. No. 93-1 (concluding that "Student's right to a FAPE was . . . impeded" when the DOE "did not properly inform Parents of the April 6, 2010 IEP meeting," which meant that "Parents were not able to attend the meeting and provide requested data regarding Student's current levels of functioning" or communicate "their concerns for Student's education" although "Student had not been in the [public] school setting for five months" by that time); Aug. 15, 2011 Admin. Decision at 16, Dkt. No. 49-2 (finding that "Student was denied a FAPE" because "Father's requests to conduct an IEP for student [in Fall 2010] were thwarted when Father received incorrect information from the [special education teacher] regarding conducting an IEP meeting for Student" and "Parents were never provided with the correct information about holding an IEP meeting for Student"); Dec. 20, 2012 Admin. Decision at 11–12, Dkt. No. 108-3 (finding and concluding that "Student required one-to-one services," so "[i]n light of Judge Ezra's finding that the November 4, 2010 IEP did not offer one-to-one services, . . . the November 4, 2010 IEP was not substantively adequate to address Student's needs and provide Student the

15

opportunity to achieve meaningful educational gains, and denied Student a FAPE"), *aff'd* Jan. 29, 2018 Order at 14–17, Dkt. No. 89 (citations omitted).

Furthermore, Parents meet the second criterion—the specialized curriculum developed by CARD and privately implemented via AMS was "proper under the [IDEA]." *Carter*, 510 U.S. at 15. Although the DOE attempts to refute the propriety of placement at AMS for Student by arguing that AMS was determined by AHO Young not to be an appropriate placement in at least one separate case involving a different child (Opp'n at 8–9, Dkt. No. 108), such an argument makes little sense for two reasons. First, every AHO presented with the question has consistently concluded that *this* CARD/AMS program was "appropriate" for *Student*'s individual needs. *E.g.*, Sept. 10, 2010 Admin. Decision at 17 (concluding, "[b]ased upon the testimonies of parents and the CARD representative," that "the CARD program is an appropriate placement for Student where he is able to make meaningful educational gains"); Sept. 21, 2010 Admin. Decision at 3 (FOF 5), 11, Dkt. No. 93-1 (finding that "the Private Home Program" Parents "procured . . . for Student" "[i]n February or March 2010" "is appropriate for Student"); Aug. 3, 2011 Admin. Decision at 1, 3 (FOF 3), 17, Dkt. No. 108-5 (concluding, "[b]ased upon the testimonies of Father and the CARD regional director," that "the CARD program is an appropriate placement for Student where he is able to make meaningful educational gains," and noting that "Student

receives his CARD services on the [St. Theresa School] private school campus");

Aug. 15, 2011 Admin. Decision at 7 (FOFs 43, 44), 10 (FOF 51), 16, Dkt. No. 49-

2 (explaining that "the AMS program" is where Student "receives services . . .

based on [his] individual CARD developed program," and "find[ing] by a

preponderance of the credible evidence that Student's AMS program is appropriate

for Student's individual needs and is being implemented with fidelity"); Dec. 20,

2012 Admin. Decision at 1, 4 (FOF 2), 6 (FOF 12), 11, Dkt. No. 108-3 (affirming

the appropriateness finding made in the Aug. 3, 2011 Admin. Decision).  And

second, what might be an appropriate placement for one child would not

necessarily be appropriate for another.  *See generally C.B.*, 635 F.3d at 1159–60

("To qualify for reimbursement under the IDEA, parents . . . . need only

demonstrate that the placement provides educational instruction *specially designed*

*to meet the unique needs* of a handicapped child, supported by such services as are

necessary to permit *the child* to benefit from instruction." (emphasis altered))

(quoting *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 365 (2d Cir. 2006)); *Sam K. ex*

*rel. Diane C. v. Dep't of Educ.*, 2013 WL 638603, *13 (D. Haw. Feb. 13, 2013)

(noting that in the context of determining whether "[a] private placement is

appropriate," "[t]he term 'unique educational needs' is broadly construed to

include the 'academic, and vocational needs' of a [particular] student") (quoting

*Seattle Sch. Dist. v. B.S.*, 82 F.3d 1493, 1500 (9th Cir. 1996)).  Moreover, the

record before the Court supports a finding that Student achieved measurable progress as a result of his private, individualized, CARD/AMS curriculum (*e.g.*, Sept. 10, 2010 Admin. Decision at 8 (FOFs 42, 45), Dkt. No. 46-7; Sept. 21, 2010 Admin. Decision at 7 (FOFs 42, 43), Dkt. No. 93-1; Aug. 3, 2011 Admin. Decision at 3 (FOF 8), 4 (FOF 10), 17, Dkt. No. 108-5; Aug. 15, 2011 Admin. Decision at 10 (FOFs 53–55), Dkt. No. 49-2; Dec. 20, 2012 Admin. Decision at 5 (FOFs 7, 9), Dkt. No. 108-3), which also demonstrates its appropriateness, *see, e.g.*, *Sam K.*, 2013 WL 638603 at *13 (noting that the student's "actual progress in several education areas . . . demonstrates that the AHO correctly concluded that [the private placement] was an appropriate placement") (citing *C.B.*, 635 F.3d at 1158–60 (affirming full reimbursement award for cost of private placement, deemed to be "appropriate," in part because the student "showed 'significant growth' in many learning areas and in social development"); *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1526–27 (9th Cir. 1994) (affirming reimbursement for private placement that was "appropriate" because it provided "individually designed" instruction and counseling to the specific child in question, whose "educational benefit" from the placement "was demonstrated by [the child's] significant progress in language skills, and increased cooperation and interaction with peers")).

Accordingly, both minimum criteria are easily met for reimbursement here.

B.    **The Equities Also Favor Granting Reimbursement**

In exercising its discretion to shape the appropriate remedy in this matter, *see C.B.*, 635 F.3d at 1159 (citing *Carter*, 510 U.S. at 15–16), the Court also concludes that equitable considerations favor reimbursement, *see Anchorage*, 689 F.3d at 1059 (citing *Forest Grove*, 523 F.3d at 1088–89).  That is, "[t]he conduct of both parties must be reviewed to determine whether relief is appropriate." *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1496 (9th Cir. 1994) (internal citations omitted).  And here, the AHOs have found that the DOE failed on numerous occasions to communicate with Parents sufficiently in order to allow Parents to participate in the IEP formulation processes.  *See, e.g.*, Sept. 10, 2010 Admin. Decision at 11, 14, 18, Dkt. No. 46-7 (finding a denial of FAPE where, among other things, Parents were unable to fully participate in the development of the September 14, 2009 IEP because "the principal told the paraprofessionals not to talk with parents" and told Parents that their data "belonged to the school," and where the DOE had failed to implement Student's September 14, 2009 IEP, which provided that "Student was to be with the general education class" for a variety of activities, yet "for 7 weeks Student had not left" the special education classroom and was "not allowed to go to the general education classroom"); Sept. 21, 2010 Admin. Decision at 10–11, Dkt. No. 93-1 (concluding that "Student's right to a FAPE was impeded" by the DOE's

"untimely, paltry efforts to notify Parents of the April 6, 2010 IEP meeting" failed

to "ensure that Parents [would] be participants at the meeting," which had impeded

Parents' ability to provide requested data regarding Student's current levels of

functioning and otherwise participate in the IEP formulation process (footnote

omitted)); Aug. 15, 2011 Admin. Decision at 15–16, Dkt. No. 49-2 (describing a

"loss of educational opportunity" for Student when the DOE failed to "make a

FAPE available to Student[] until six and a half months after" Father requested an

IEP meeting, where, although the DOE school "was clearly aware that Student

continued to be eligible for a FAPE and that Father was interested in scheduling an

IEP meeting," Father's efforts to do so were "thwarted when [he] received

incorrect information" from the special education teacher and was "never provided

with the correct information").  Parents, however, acted reasonably in securing a

private placement in order to ensure that Student would progress academically

during the pendency of proceedings.  *See Anchorage School Dist*., 689 F.3d at

1059 (holding that parents acted reasonably in finding private tutoring services for

their son); *C.B.*, 635 F.3d at 1160 (affirming district court decision that gave great

weight to the fact that student received significant educational benefits in private

placement).[7]

_____

[7]Moreover, the DOE had sufficient notice that Student was being educated pursuant to the
CARD curriculum in a non-public school environment.  *Compare, e.g.*, Aug. 15, 2011 Admin.
Decision at 6–7 (FOFs 34, 36–38), Dkt. No. 49-2 (stating that Parents received letters from DOE

## C. Specific Reimbursement Awarded

In their briefing on the instant matter, Parents represented that they have already received the following reimbursement payments from DOE:

| Date Received | Amount Received | Time Period Represented |
| --- | --- | --- |
| 03/11/2011 | $56,249.64 | 11/04/2010 – 02/2011 |
| 03/23/2011 | $14,062.41 | 03/2011 |
| 04/26/2011 | $14,062.41 | 04/2011 |
| 05/31/2011 | $14,062.41 | 05/2011 |
| 06/22/2011 | $14,062.41 | 06/2011 |
| 08/11/2011 | $14,062.41 | 07/2011 |
| 09/23/2011 | $42,187.23 | 08/2011 – 10/2011 |
| 12/05/2011 | $14,062.41 | 11/2011 |
| 12/21/2011 | $14,062.41 | 12/2011 |
| 01/24/2012 | $14,062.41 | 01/2012 |
| 04/23/2014 | $10,044.58 | 03/11/2014 – 03/31/2014 |
| 05/22/2014 | $14,062.41 | 04/2014 |
| 06/16/2014 | $14,062.41 | 05/2014 |

Mot. for J. Granting Reimbursement ¶¶ 13, 28, Dkt. No. 93 (citing Howard G. Decl. ¶¶ 6, 9, Dkt. No. 75-1). Based on representations made at the April 5, 2018 hearing, the Court infers that Parents have also been reimbursed for much of the

School #3 in November 2010 acknowledging that Student had not been enrolled in public school since early September 2010), *with Dep't of Educ. v. Z.Y. ex rel. R.Y.*, 2013 WL 6210637, *16–17 (D. Haw. Nov. 27, 2013) (remanding for further consideration of "whether Student's private placement was appropriate" where the AHO's decision was "not sufficiently thorough or careful to warrant more than minimal deference," in part because the AHO "did not make an express finding as to whether [p]arents provided adequate notice to the DOE before removing [s]tudent from the [public] [s]chool for reimbursement purposes") (citing 20 C.F.R. § 300.148(d)(1)(i)–(ii)); *see also* DOE Reimbursement Letter (Oct. 14, 2010), Dkt. No. 108-7; Mot. for J. Granting Reimbursement ¶ 13, Dkt. No. 93 (noting that Parents received payment from the DOE of $56,249.64 on March 11, 2011, which represented reimbursement for Student's private educational expenses during the time period from November 4, 2010 to February 2011 (citing Howard G. Decl. at ¶ 6, Dkt. No. 75-1)).

time subsequent to May 2014.  *Cf.* Fusco Decl., Ex. A [AMS Invoices], Dkt. No. 95 at 5–56 (describing costs of "services rendered" from 02/2012 through 03/10/2014 and seeking reimbursement for those costs).

Notwithstanding the fact that Parents have limited their reimbursement request to the date of AHO Alm's decision on September 21, 2010 (*e.g.*, Mot. for J. Granting Reimbursement at 18–20, Dkt. No. 93 (arguing that the Sept. 21, 2010 Admin. Decision effectively triggered the "stay put" rule and requesting "an award for reimbursement of private tuition from 9/21/2010 through the present plus interest with a credit for payments made by []DOE, payable to Plaintiffs within 30 days of the Judgement")), however, Parents are entitled to retroactive reimbursement for the costs of Student's private education dating back to the denial of FAPE related to Student's September 14, 2009 IEP, which led Parents to remove Student from public school in early October 2009.  *See, e.g.*, Sept. 10, 2010 Admin. Decision at 7 (FOF 33), 17–18, Dkt. No. 46-7 (concluding that the DOE's failure to allow Parents to fully participate in the creation of the Sept. 14, 2009 IEP and the DOE's "failure to provide Student access to the general education classroom," thereby failing to implement the Sept. 14, 2009 IEP, "resulted in a denial of FAPE"; finding that "Student last attended the [DOE] school on October 2, 2009"; concluding that Parents are "the prevailing party in this matter"; and awarding Parents "reimbursement for any educational and related

expenses incurred from . . . October 2, 2009 through the end of 2010 summer ESY" "including any expenses related to Student's placement in the CARD program"). Accordingly, this Court awards to Parents reimbursement for any costs or expenses related to Student's private education retroactive to the deficient September 14, 2009 IEP, upon their documentation of such costs or expenses (*e.g.*, AMS Invoices, Dkt. No. 95 at 5–56), but clarifies that DOE is to be credited for all payments it has already made to Parents that would otherwise be captured under this Judgment (*see, e.g.*, Howard G. Decl. ¶¶ 6, 9, Dkt. No. 75-1).

## III.   The Court Need Not Reach the Issue of "Stay Put"

In light of the above conclusion that Parents are entitled to reimbursement for Student's private educational costs retroactive to September 14, 2009, the Court need not address Parents' alternative claim for reimbursement under the IDEA's "stay put" provision, 20 U.S.C. § 1415(j). *Cf., e.g.*, *Ashland Sch. Dist. v. Parents of Student E.H.*, 587 F.3d 1175, 1186 (9th Cir. 2009) (affirming decision to deny reimbursement under 20 U.S.C. § 1415(i)(2)(C) and subsequently addressing the reimbursement request under 20 U.S.C. § 1415(j)).[8]

---

[8]The Court notes that during the April 5, 2018 hearing in this matter, which was consolidated with a hearing in the related case, *J.G. v. State of Hawaii, Dep't of Educ.*, 1:17-cv-00503-DKW-KSC (D. Haw. Oct. 10, 2017), the DOE expressly agreed that AMS is the stay put placement based on the last implemented IEP in February 2016.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Plaintiffs' Motion for Judgment Granting Reimbursement of Private Tuition (Dkt. No. 93).

IT IS SO ORDERED.

DATED: May 17, 2018 at Honolulu, Hawai'i



Derrick K. Watson
United States District Judge

---

*Howard G., Individually And On Behalf Of His Minor Child, Joshua G.; And Joshua G. v. State Of Hawaii, Department Of Education, Kathryn Matayoshi, In Her Official Capacity As Acting Superintendent Of The Hawaii Public Schools,* CIV. NO. 11-00523 DKW-KSC, **ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT GRANTING REIMBURSEMENT OF PRIVATE TUITION**